Good morning, Your Honors, and may it please the Court. My name is Claire Kuefner, and I, along with my colleague, Alexander Klein, am a certified law student representative appearing on behalf of the appellant, Ms. Gladney. Our supervising attorney, Gregory Sisk, is here with us today. At this time, I would like to reserve six minutes for my co-counsel on rebuttal. Thank you. Welcome. Yes, Your Honor? I said welcome. Oh, thank you, Your Honor. Your Honor, the Supreme Court has stated that, quote, being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses, and this notion was put into law in the Prison Rape Elimination Act and its implementing regulations in 2012. Yet here, after the plaintiff, a transgender woman housed in the most dangerous federal facility for sexual violence, was sexually assaulted while in confinement, the government asserts that it ought to be granted unreviewable discretion in its security measures as they relate to assault. Counsel, I'd like to ask you first about the statute, because it appears to me that the statute itself contemplates discretion. It talks about reducing and punishing rape. It also provides for increased data collection so that the management and the administration of the correctional facilities can be improved, and that sounds to me like a grant of discretion. Here's information. Figure out what to do with it that will assist you in finding techniques to reduce prison rape. So why do you think this is an elimination of discretion rather than a specific grant of discretion? Yes, Your Honor. The prison rape elimination itself as a statute is broad, as you've identified. However, where discretion is taken away is through the implementing regulations, which do direct a specific course of conduct in which regulation directs a course of conduct with respect to a prison rather than a lockdown? Yes, Your Honor. 28 CFR 115.113D is the regulation that provides that there must be continuous direct sight and sound supervision once an inmate has been identified as vulnerable, but you're correct to note that that does appear in the detention rather than the adult prison section of the regulation. Yes, it not only appears there, but the whole thing talks about detainees, not prisoners. It talks about lockups, not lockdowns. I apologize for that. And it is very, very specifically about detainees and not prisoners. There's nothing similar is for prisons. Your Honor, you're correct to identify that it is in the detention section and does specify detainees. However, it still ought to apply to adult prisons for three reasons. First, in the adult prison regulations at 115.13A1, when talking about video monitoring, the adult prison regulation accepts, quote, generally accepted detentional practices, which means that it's incorporating that very language from the detentional section. Why is that generally? Excuse me. If it's generally accepted, it wouldn't need to be in a specific regulation. It would be something more generic. So where do you find a generally accepted requirement for continuous monitoring? Your Honor, it is our position that because it is written into the detentional section, that is where the generally accepted detentional practices are codified. So insofar as the detention section specifies this as a mandatory course of adult prison regulation takes that into account in 115.13A1. It seems to me that you're advocating a reading that would require absolute perfection. And when you're managing that many people, I mean, we have a situation here where the guard is not asleep, is doing the job, but someone gets out of bounds, I guess. And your client, Ms. Gladney, as far as I can tell, had not been identified as having been prior assaulted in the record. So there's no, they're not on notice of a prior assault. And also the BOP's individualized risk assessment took into account Ms. Gladney's transgender status, among other factors. And Ms. Gladley seems to have accepted that assessment as accurate. So I don't see, it doesn't, doesn't this indicate a lack of subjective awareness on the part of BOP, part regarding whether Ms. Gladney faced a substantial risk of sexual assault? I just, you know, I see for you to prevail, what we have to say is if anything happens, it has to be the prison's fault. And dealing with this many people, I don't see how that could be the standard. Yes, Your Honor, we understand your concern about requiring absolute perfection. However, that's not necessarily what the regulation demands. The regulation simply demands continuous direct sight and sound monitoring of vulnerable prisoners, which could have been achieved in a number of feasible ways, like implementing- How is she vulnerable other than she was assessed as a transgender woman. She accepted that assessment. So that's how she was housed. There's no prior assaults in the record. And you have this, an out of bounds situation, but the guard wasn't asleep. They were having a regular movement of prisoners and that's what I meant. It's an excellent question and it leads us well into the second point about the Eighth Amendment and deliberate indifference. As this court has clearly established- Before you leave that point, you've noted that the monitoring can be achieved in a number of different ways. Doesn't that leave to the BOP discretion as to how to do it? Yes, Your Honor, absolutely. It provides discretion for the manner in which continuous direct sight and sound supervision can be achieved, but not the end. The end is non-discretionary, but the means used to achieve that end perhaps could be. So, Your Honor, on my second point, as this court has clearly established, the government has no discretion to disobey the Constitution and the FDCA's discretionary function exception is unavailable where it does so. That's this court in Galvin v. Hay. And in cases involving the discretionary function exception, the government- Excuse me, counsel. With respect to the Eighth Amendment claim, what facts are in the record that show a risk specific to your client that is different from the risk to any transgender inmate and pretty much any prison of this type? What specifically? Was there a threat to her? Was there a prior- Does the record show assaults by the perpetrator previously or anything personal to your client? Your Honor, there are two responses. First, in Farmer v. Brennan, the United States held that it was not necessary- Counsel, I'm asking you about the facts. I'm not asking you about the law. What does the record show about any personal knowledge of a specific personal risk to your client? Yes, Your Honor. Here, it was clearly known to the prison that Mrs. Gladney was a transgender woman who was at an exceptional risk of violence. That's in the record at 7, 22, and 43. And that also doesn't differentiate her from any other transgender inmate. Is there anything else? Your Honor, USP Tucson was also well-documented in the record as the most dangerous federal facility for sexual violence. And like I was noting before, in Farmer v. Brennan, the court specifically held that there does not need to be a known risk of a particular inmate and another particular inmate, but so long as there is an identifiable group of individuals who would be put at a heightened risk, that is sufficient to find deliberate indifference under the Eighth Amendment as it relates to transgender individuals. So here, the prison knew of a heightened risk to Ms. Gladney. They knew that they took no heightened steps to try to protect her, and that constituted deliberate indifference under the Eighth Amendment, which shields the government from being able to use the discretionary function exception in this case. And with that, I would like to cede the rest of my time to my co-counsel for rebuttal. Thank you. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the Court, my name is Michael Ambrey with the U.S. Attorney's Office, District of Arizona, here on behalf of Defendant Appel Lee, United States of Arizona. I want to address the jurisdictional issue that the Court asked about in its order and just touch on some of the arguments that are made in the reply brief. Before I do that, in case I don't get to this, I want to make it clear that this Court's decision in Alfrey, I believe, answers the merits of this appeal. It addresses the type of conduct that's alleged in this case, sort of classified as a failure to protect, finds the discretionary function exception applies to particular conduct, even though there is an aspect of potential negligence alleged, and also rejects this idea of a professional judgment versus governmental discretion that's argued in the reply brief. So I will refer to Alfrey as I get into those aspects, but I wanted to make it clear that that's an important decision for this case. Also, I wanted to also, in case I don't get to it, this is an appeal from a Rule 12b-1 decision. I will be referring to facts in the record. The plaintiff's, Ms. Gladney's, allegations of fact are not entitled to the presumption of truth. It's a plaintiff's obligation to provide facts relating to the jurisdictional issues. I will point out where a plaintiff didn't do that, but I want to keep that standard in mind. Let me get you to the Eighth Amendment question because that's, just speaking for myself, seems to be the closest question as to whether there's at least a jurisdiction over that. Um, it's true that farmer is law and not fact, but it does seem that the facts there and the facts here are relatively similar, and I'd like you to address why, in your view, you think there is not enough for the district court to have to examine whether there's jurisdiction over the Eighth Amendment? Uh, certainly, and we're not talking about a claim. I think as framed by appellant, it's an argument that there's no discretion because the Constitution. Correct. I misstated it, but there is no discretion to violate the Eighth Amendment, so I think of it as a sort of subsidiary, but at all events, if you would address that, I'd appreciate it. Certainly. Um, I think the court already pointed out that the key issue is appellant's argument is that transgender inmates as a class are entitled to heightened protections. That is not the way the regulatory environment establishes. It's an individualized determination. Um, this court has... But in farmer, it wasn't specifically individualized. As I recall, there wasn't anything particular about that inmate that was different, so why isn't it sufficient that this is a very high-risk prison for sexual assault and transgender inmates are at greater risk? Under farmer, why isn't that enough? Because there is an evaluation of this particular inmate's risk, taking into account a variety of factors. Certainly, a prison is a dangerous environment. It's a very complicated environment, but there is no known risk to this particular inmate that would make this assault foreseeable. What we have here, there was absolutely no history between these two inmates. There was no complaint from Ms. Gladney about any insecurity about her safety. There was no complaint about this particular inmate. Um, as a matter of fact, Ms. Gladney saw this inmate enter the unit, voluntarily went with this inmate to a cell, closed the door. There was absolutely no indication that Ms. Gladney was at any excessive risk. And so my point is that what I don't see is a constitutional right to a transgender inmate, as a class, to have what Appellant is describing as continuous monitoring. That's just, there is no constitutional right cited by plaintiff in that regard. Let me ask you this though. Alright, my understanding is the discovery is closed, right? So we everything, we have everything here. Correct. But the district court failed to consider whether the eighth amendment limited the government's discretion. How can we avoid remanding this? Well, I think the court can affirm on any ground supported in the record. Um, certainly it's de novo review. Uh, that's my point with respect to the 12B1 standard. It is plaintiff's burden to establish a constitutional violation. I understand that the argument on the Appellant's side is that it's the government's burden to establish that. But I'd like to just highlight that because it goes to your Honor's question. Um, the burden as set forth in the Gobbert case, as set forth in the Alfrey case, is for the government to establish that the, uh, challenged conduct is discretionary. Meaning it's subject to a judgment or choice. Uh, Gobbert further instructs that it's by looking at the statutes, the regulations, the policies. Uh, and then number two, that that choice or judgment is susceptible to policy determinations. Once the government establishes that, it's the plaintiff's burden to establish that there is some mandatory rule that circumscribes the government's, uh, uh, discretion, i.e. in this case, a constitutional violation, a constitutional right. Um, or that, uh, the, the, the, the type of conduct in issue is not susceptible to policy considerations. Meaning it's not the type of activity that Congress intended to shield. Um, what we see in the Nurse case and the Galvin case is, uh, not that the court put the burden on the government to establish a lack of constitutional violation. That's not what happened. In the Galvin case, the court specifically found that the plaintiff had established a constitutional violation. It was actually pled and established. In the Nurse case, uh, the, the court, uh, uh, left open the possibility that the plaintiff could establish some mandatory constitutional, uh, prescription on the government's discretion, uh, and allowed the case to proceed past pleading, um, with the idea to see whether the plaintiff could establish a claim outside the discretionary function exception. And I'll say one more thing on that point. Uh, the Doe versus Holy See case from this court, uh, specifically, specifically says that the plaintiff must advance a claim that's outside the discretionary function exception. Um, so my point is that it's the, it's the plaintiff's burden to establish this, this, uh, uh, restriction on the government's discretion by virtue of the constitution. If we look at the record, uh, and as argued by counsel, the only thing we see is that there is a transgender inmate. Uh, there's no specific facts evidence that would establish, uh, a constitutional violation. Uh, and, and what we don't see is any citation to any authority that says a transgender inmate is entitled, constitutionally entitled to quote, continuous monitoring. Um, and we don't see a claim that that the regulations, uh, that provide for, for discretion. Counsel? Yeah. The eighth amendment wouldn't have to provide for continuous monitoring in order to be a viable theory because all that is required is a, essentially a knowing, knowing and ignoring a substantial risk to the individual. It doesn't necessarily require proof as you've said, that continuous monitoring is the answer or is even required. Um, for, for instance, I know this is counterfactual, but suppose the, the, uh, and yet was allowed to come into the unit. There's really nothing about monitoring that might give rise to a theory under the eighth amendment. So it seems like you're sort of mixing their, uh, regulatory theory with their eighth amendment theory. Except that there are no facts other than, uh, plaintiffs being transgender status and uh, if there were facts that there was, that Ms. Gladney was subject to some particular harm, um, like in the Alfrey case, uh, in that case, the inmate was murdered. But prior to that, uh, the, the, his fellow, his cellmate who committed the murder had threatened him. Um, and that threat was brought to, to, uh, the officials. It was brought to the unit staff. The unit staff didn't separate them. Um, but there was, there was a known, uh, risk, uh, besides some idea that the inmate had some status that, that, uh, entitled him to protection. Um, in the Alfrey case, the court found that despite the, the units, uh, the unit staff's failure to separate the inmates, despite what was alleged to be a, uh, failure, a negligent failure to find, uh, the, the, uh, what was described as the weapon used in the murder when they searched the cell, uh, prior to the murder, uh, despite a failure to, uh, perform a background search to determine whether this other inmate was a, was a threat. Um, the court found the discretionary function exception applied to that conduct because there was discretion involved, policy-based discretion. It was susceptible to policy considerations. Um, we don't have anything close to that in this case. Uh, the reason I say that there's, there's, we, we don't have established that there's a constitutional, an eighth amendment right to continuous monitoring is because that's the claim. Uh, the claim is that there are some constitutional violation by not having that type of heightened protection. Um, what we have here is that we have regulations that specifically, and, and conduct in conformity with the regulations that provide discretion in that area, um, that don't require video monitoring, for example, in every corner of the facility. Counsel, we don't have anything like that. What is your response to the argument that the generally accepted monitoring practices? I, it's, I understand that that is a reference in the, uh, the, the, the regulation. It's one of many factors. Um, there's no evidence that there is, what that would mean, what is generally accepted, uh, uh, correctional practices. Um, there's no indication that this isn't a generally accepted, uh, uh, correctional practice. Not having... Counsel, their argument is that because it appears in the lockup section, it appears there because it is a generally accepted prison practice and therefore is the argument. I don't, I don't, I don't see how that, the regulations are completely separate. There is no incorporation by reference in the regulations themselves. Continuous monitoring is a, is a term of art in the lockup, uh, section of the regulations. Um, there, there's no incorporation of that. It's, it's specifically excluded from the adult prison regulations. Uh, I don't see any connection between the provision in the lockup facility for, uh, continuous monitoring to generally accepted correctional practices in a, in an adult facility. They're completely separate types of facilities, completely separate, uh, regulations that are applicable to them. Um, so I, I don't see the connection there. Uh, there, there's no means continuous monitoring. Um, it's very vague and I think it's a, I think it, it particularly leads to the discretion of correctional, uh, facilities and officials, what that is and how to apply those, uh, correctional, uh, measures in the, in the setting for the particular facility. Um, there's no mandate about what that, what that means, which indicates discretion to the, uh, correctional, uh, uh, correctional officers, correctional officials. Your honors, I'm about out of time and I didn't get to talk about the, um, uh, the jurisdictional issue. You are in fact out of time, but we, we will, uh, not withstanding our order and that neither of you addressed it, we'll, uh, we'll figure it out. Thank you. Thank you. You're muted. May I proceed your honor? Good morning. May it please the court. My name is Alexander Klein and I'm also a certified law student representative appearing on behalf of the appellant. Your honors, in this case, it is essential to return to first principles. The Prison Rape Elimination Act means what it says. Through it, Congress unanimously established a zero tolerance policy for prison rape. Counsel, counsel, I'm going to ask you the same question I asked your co-counsel. It appears to me that that statute affirmatively grants discretion rather than takes it away. Zero tolerance doesn't mean a guarantee that there will be nothing because the statute specifically talks about reducing rape, not eliminating rape, punishing the people who commit rape, which assumes that it will happen and collecting data so that the prisons can learn ways of managing this problem better. So why isn't that a recognition that rape is here to stay, sadly, and that the, uh, the prisons have discretion to figure out how best to work on reducing and punishing as well as hopefully eliminating to some extent. Your honors, in the statute itself at 34 USC section 3302 subsection two, it directed the attorney general to adopt and implement national standards for eliminating prison rape. And that is exactly what the attorney general did in the implementing regulations found at 28 CFR. There is no regulation concerning adult prisons that is relevant as far as I can tell. Is there a regulation specific to adult prisons to which you can point that hasn't already been dealt with by your co-counsel that deals with how specifically this situation should be dealt with? Respectfully, your honor, I would reiterate what my co-counsel mentioned in 28 CFR section 115.13 A1, where it, where the BOP stated that in determining the need for video monitoring, that they will, shall account for all generally accepted detention practices. What does the record show about what are those generally accepted practices in adult prisons, not in lockups, but in adult prisons? What is, what do the regulations or other sources in this record show are those accepted practices? Your honor, the accepted practices in our, in our view are what are codified at 28 CFR section 115.113 subsection E. That has nothing to do with adult prisons. One would think that if that was the standard, it would simply be incorporated by reference, and it is not. And just, I suppose we're not supposed to take judicial notice, but I know of no prison that engages in continuous monitoring. Respectfully, your honor, it's our position that in 28, in the adult prison subpart A regulations, when it adopts generally accepted detention practices, the use of the word detention, which is the only time it appears in subpart A in a non-immigration specific context, is what adopts the standards from the lockups where it uses that exact same language in 25 sub provisions. And further, I want to further address the eighth amendment issue and clarify that the government is simply mistaken and that the burden is on the government to prove that the discretionary function exception applies in any given case. And that's what this court stated in Prescott versus United States. And further in Galvin versus Hay, this court stated that the government does not have discretion to violate the constitution. So when a prison official acts with deliberate indifference in violation of the eighth amendment, the discretionary function exception simply cannot apply as a matter of law. Now in Farmer versus Brennan, the Supreme Court indicated that failing to act despite a known risk, a known and substantial risk of harm, and not to a particular inmate, but to a particularized group or identifiable group of prisoners may not apply. Okay, your client is in a prison for a lot of sex offenders and your client falls in that category as well. So it's, what other than that Ms. Gladley is a transgender woman that there's nothing in the record that with problems with the inmate that assaulted her or with anyone, what facts do you have that other, she's a transgender woman. Okay. They did an individualized study on her. She's not objecting to her cell assignment or that risk assignment, right? No, your honor. In addition to our position that being transgender is enough and that is what it's also that she was housed in the most dangerous federal facility for sexual assault in the entire nation, which the Prison Rape Elimination Act and its implementing regulations direct the prison to consider when determining the need for the heightened protection. Further in the record, it shows that the reason she's in that prison is because of her own offense. Yes, your honor. She is in the prison because of her own offense, but in Farmer versus Brennan, that it's just simply the Supreme Court stated as simply not part of the punishment that criminal offenders pay for their offenses. I agree with that, but how do I know on the facts of this case, what am I missing that she's more at risk here than what is there in the record? Is it just she's a transgender woman, therefore she must have one-on-one people monitoring her. Is that how we solve this? Your honor, I see my time is about to expire. May I answer your question? Please answer. Thank you, your honor. It is our position that in the program statement 5324.12, the government has acknowledged that transgender status is an objective criteria for risk of sexual victimization and in the same statement stated that they are at risk based on one or a combination of those factors. So while transgender status is enough, she was also naive and passive and that can be found in the record ER-22 and that prison officials knew of that status and consistently referred to her by her preferred titles and pronouns of Miss, Ma'am and Ms. And all of that rises to the level of a heightened risk. Thank you. Thank you. Thank you, counsel. The case just argued is submitted and we would really like to thank the program that has supplied these very help to the court and we have pro bono counsel and we're very, very appreciative for your efforts. In fact, we appreciate the helpful arguments from all three of you. With that, the case is submitted and we are adjourned for this morning's session.
judges: Graber, Callahan, Selna